BRUNO, Plaintiff in error, vs. THE STATE, Defendant in
error.

*March 16—April 4, 1917.*

*Assault: Charivari: Use of firearms: Instructions to jury: Self-defense: Harmless error.*

1. The use of firearms against members of a charivari party cannot
   be justified except where personal violence is threatened and it
   seems to be necessary for self-defense.
2. Upon a trial for assault with intent to do great bodily harm, a
   statement of the trial judge in his instructions to the jury as to
   the testimony of a witness who identified the defendant by his
   voice, is *held* to have been entirely correct.
3. Although in such case the defendant denied the act charged, *i. e.*
   the firing of a shotgun into a charivari party, it being possible
   under the evidence that the jury might disbelieve his story and
   find that he fired in lawful self-defense, the error, if any, in
   submitting to the jury the question of self-defense was one favorable to defendant.

ERROR to review a judgment of the circuit court for Clark
county: JAMES O'NEILL, Circuit Judge. *Affirmed.*

The plaintiff in error (hereafter called the defendant) was convicted of assault with intent to do great bodily harm and brings his writ of error to reverse the judgment. The facts were that the defendant, a farmer, was at his home in the town of Reseberg, Clark county, on the evening of October 14, 1916, with his wife and family, consisting of an adult son and daughter, and a young man named William Karpinski who was paying attention to the daughter. At about 9 o'clock in the evening a number of young men and boys of the neighborhood came to the house, called out Karpinski, told him that they knew he was married, asked him for some money, or they would charivari him, and on being refused commenced the charivari by firing a gun and exploding dynamite near the house, ringing bells, beating on tinpans, and making the other noises which usually characterize this highly refined and humorous proceeding. The defendant and his family came out of the house and stood on the porch for a few minutes during the uproar. The defendant claims that rifle shots were fired by the young men and that one bullet struck very near him and his wife, and that they then went in the house. It is claimed by the prosecution that the defendant had a shotgun and fired several times into the crowd while he was standing on the porch. This is utterly denied by the defendant, who claims that all the shooting was done by the young men. It is undisputed that several of the young men received small shot wounds, some about the head and some in the arms and side. After the shots were fired the crowd went down the road. A short time afterwards two of the young men returned to the defendant's house and called him to the door, and one of them said, "See what you have done to me," showing his wounds, and the defendant said, "It is funny if a man can't live in America and be left alone when he is minding his own business," and told them they had better go away. There was testimony to the effect that the defendant afterwards said to two or three witnesses that a bullet very nearly

killed his daughter and then he couldn't stand it any longer and he shot.

The court charged the jury among other things that:

"The witness Albert Buss testifies that he saw the defendant standing at the southwest corner of the house; the shooting began a very little instant after; that he knows the defendant's voice and that he is quite positive it was the defendant. He said the defendant said 'I will show those fellows who is living here.'"

"If the jury find that the defendant is not telling the truth when he says he did not fire the shots which wounded the boys, but that he was the one who did the shooting, the question may arise whether the defendant was justified under the circumstances."

"The use of a deadly weapon to repel a simple assault is not ordinarily justified. If the defendant fired into the crowd, he can only justify such an act by making out that it was done in self-defense within the rule the court has given."

The cause was submitted for the plaintiff in error on the brief of *R. J. MacBride,* of counsel, and *Emery W. Crosby,* attorney, both of Neillsville, and for the defendant in error on that of the *Attorney General* and *J. E. Messerschmidt,* assistant attorney general.

WINSLOW, C. J. We have thoroughly reviewed the evidence and given careful consideration to the errors assigned, but have found no reason for reversing the judgment. Exasperating and senseless as such a disturbance is, the use of firearms cannot be justified except where personal violence is threatened and it seems to be necessary for self-defense. The jury have negatived any such situation here.

The errors assigned will be briefly considered. The statement made by the trial judge as to the testimony of the witness Buss is an entirely correct statement. It is true that the witness admitted that he could not distinguish the form of the defendant from that of the son, but as the witness was at some distance and the time was after 9 o'clock in the even-

ing, this is not singular nor significant. He identified the defendant by his voice, with which he was very familiar.

As to the other instructions, the only serious objection is that they submit to the jury the question of self-defense when no evidence had been offered on that subject. *Eggett v. Allen,* 106 Wis. 633, 82 N. W. 556.

It is true that the defendant himself denied the act, but two witnesses called by the state testified that he admitted the act to them and excused it on the ground that the boys shot bullets into the shed and nearly killed his daughter who was standing beside him. There was also considerable testimony introduced by the defendant as to the state of terror into which his wife and daughter were thrown. It was quite possible under the testimony for the jury to disbelieve the defendant's story and yet find that he shot in lawful self-defense, and the judge in submitting that question to the jury did him a kindness rather than an injury. If there was any error (which we do not intimate or decide) it was an error against the state rather than against the defendant.

The provocation under which the defendant acted was certainly great. Apparently he was a respectable citizen who had lived a law-abiding and useful life for years upon his own farm. He was no tramp or ordinary criminal. He was at his home surrounded by his family, engaged in a peaceful and commendable occupation, when this pandemonium of noise broke loose. It must have been to the last degree exasperating. While it did not justify shooting and hence does not permit us to reverse this judgment, we deem it proper to say it may well be considered by the executive upon an application for pardon. If this court had the pardoning power we feel the circumstances here presented would make a strong appeal to us for its exercise.

*By the Court.*—Judgment affirmed.

On June 16, 1917, the Governor commuted defendant's sentence to thirty days in the county jail.—REP.